Filed 2/7/24  In re Gavin S. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Gavin S., a Person Coming Under the Juvenile Court Law. | B327795 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>Eric S.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP01710A) |

APPEAL from an order of the Superior Court of Los Angeles County.  Lisa A. Brackelmanns, Juvenile Court Referee.  Conditionally affirmed and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Eric S. (Father) appeals from the order terminating parental rights over his child, Gavin S., under Welfare and Institutions Code[1] section 366.26.  Father's sole contention is that the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California law.  DCFS concedes there was ICWA inquiry error, and requests the case be remanded for the limited purpose of ensuring proper compliance with ICWA.  Thus, we conditionally affirm the order terminating parental rights and remand for ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and K.S. (Mother) are the parents of Gavin. On March 15, 2019, DCFS filed a section 300 petition based on Mother's substance abuse and Father's history of child sexual abuse and mental health issues.  The petition included an Indian Child Inquiry Attachment (ICWA-010) form indicating that Gavin had no known Indian ancestry.

At the March 18, 2019 detention hearing, Mother appeared and submitted a Parental Notification of Indian Status (ICWA-020) form in which she indicated she did not have any Indian ancestry as far as she knew.  Based on Mother's form, the juvenile court found that ICWA did not apply.  The court made detention findings for Gavin, and set the matter for an adjudication hearing.

---

[1]      Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

2

DCFS initially placed Gavin with his maternal aunt, K.B., and later with his maternal grandmother, P.H. In April 2019, DCFS interviewed the parents for its jurisdictional and dispositional report. During their interviews, both Mother and Father denied any Indian ancestry.

On April 30, 2019, Father made his first appearance in the case. At that time, he submitted an ICWA-020 form in which he indicated he did not have any Indian ancestry as far as he knew. Based on Father's form, the court again found that ICWA did not apply.

On June 11, 2019, the juvenile court held a combined jurisdictional and dispositional hearing. The court sustained an amended section 300 petition, removed Gavin from the custody of his parents, and granted reunification services to both parents.

At the 12-month review hearing held on October 15, 2020, the court released Gavin to Mother based on her progress with her reunification services. However, a few months later, DCFS filed a section 387 petition as a result of Mother's recurrent substance abuse. Gavin was placed back in the home of his maternal grandmother.

On June 22, 2021, the juvenile court ordered Gavin removed from parental custody. The court bypassed reunification services for both parents and set the matter for a section 366.26 hearing. Following several continuances, the court ordered DCFS to provide an update on placement and ICWA.

In a status review report, DCFS stated that on November 14, 2022, it spoke with Father and the maternal grandmother, P.H., regarding ICWA. At that time, both Father and P.H. denied "any form of ICWA."

Over the course of the proceedings, DCFS also had contact with other extended family members. DCFS met with Gavin's maternal aunt, K.B., while the child was in her care, and later considered her for a possible legal guardianship. At one point, DCFS held a child and family team meeting with Gavin's paternal aunt, Amy W., and approved his paternal cousin, Jenny C., to monitor Father's visits. There is no indication in the record that DCFS asked any of these relatives if Gavin had any Indian ancestry.

On February 27, 2023, the juvenile court held the section 366.26 hearing. The court again found that ICWA did not apply, and that there was no reason to know that Gavin was an Indian child. The court terminated parental rights over Gavin and ordered adoption as the child's permanent plan. The court designated Gavin's maternal grandmother as the prospective adoptive parent.

Father filed a timely appeal.

## DISCUSSION

On appeal, Father contends, and DCFS concedes, that the juvenile court failed to ensure compliance with ICWA's inquiry provisions because no inquiry was made of available extended family members about Gavin's possible Indian ancestry.

### I. Governing law

ICWA mandates that "[i]n any involuntary proceeding in a [s]tate court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and the right to intervene. (25 U.S.C. § 1912(a).) Similarly, California law requires notice to

4

the child's parent, Indian custodian, if any, and the child's tribe if there is "reason to know . . . that an Indian child is involved" in the proceeding. (§ 224.3, subd. (a).) Both juvenile courts and child protective agencies "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14.)

At the first appearance of each party, the juvenile court must inquire whether that party "knows or has reason to know that the child is an Indian child," and must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Additionally, when a child protective agency takes a child into temporary custody, it must inquire of a nonexclusive group that includes the child, the parents, and extended family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b)). Extended family members include adults who are the child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the [juvenile] court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) We generally review the juvenile court's ICWA findings under the substantial evidence test, " ' "which requires us to determine if reasonable, credible evidence of solid value supports the court's order." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

5

## II. Remand is required for ICWA compliance

In this case, DCFS acknowledges that it had contact with several of Gavin's maternal and paternal extended family members over the course of the proceedings. These relatives included the child's maternal grandmother, P.H., his maternal aunt, K.B., his paternal aunt, Amy W., and his paternal cousin, Jenny C. The record reflects, however, that apart from the maternal grandmother, DCFS did not ask any of these extended family members whether Gavin is or might be an Indian child.

In the absence of any evidence that DCFS complied with its duty to inquire of known and available extended family members, as required by section 224.2, subdivision (b), the juvenile court's finding that there was no reason to know Gavin was an Indian child was not supported by substantial evidence. (See, e.g., *In re Jayden G.* (2023) 88 Cal.App.5th 301, 311 [ICWA error where DCFS failed to inquire of available extended family members for whom it had contact information]; *In re J.W.* (2022) 81 Cal.App.5th 384, 389 [ICWA error where DCFS did not ask mother's extended family members about their Indian ancestry, despite having contact with maternal grandmother, uncle, and aunt]; *In re M.M.* (2022) 81 Cal.App.5th 61, 70, review granted Oct. 12, 2022, S276099 [ICWA error where no inquiry was made of extended family members with whom DCFS was in contact].)

Appellate courts have adopted several divergent standards for deciding whether an ICWA inquiry error is prejudicial. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 611–618 [describing four approaches for assessing prejudice at the inquiry stage and adopting a fifth, injury-focused standard].) In this case, however, we need not decide which standard applies. DCFS concedes the matter should be remanded for the agency to conduct an ICWA

6

inquiry of known and available extended family members, and if required, to proceed in accordance with ICWA's notice provisions.

Additionally, as a majority panel of this division has reasoned, placing the child with extended family members does not obviate the need for remand because "[e]ven in such cases, tribes may assert tribal jurisdiction or may formally intervene in state court." (*In re S.S.* (2023) 90 Cal.App.5th 694, 711.) "A 'tribe's rights are independent of the rights of other parties.' " (*Ibid.*) Under these circumstances and in light of DCFS's concession, we agree that remand for compliance with ICWA and related California law is the proper remedy.

## DISPOSITION

The juvenile court's section 366.26 order terminating parental rights over Gavin is conditionally affirmed, and the matter is remanded for compliance with ICWA and related California law. On remand, the court must promptly direct DCFS to comply with its duty of inquiry in accordance with section 224.2 by interviewing known and available extended family members about the child's possible Indian status. If that information establishes a reason to know that an Indian child is involved, notice must be provided in accordance with ICWA and section 224.3. DCFS shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices that were sent, together with any responses received. The court must determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether Gavin is an Indian child. If the court determines that Gavin is an Indian child, it must vacate its order and conduct a new section 366.26 hearing, as well as all further proceedings, in

7

accordance with ICWA and related California law.  If not, the court's original section 366.26 order shall remain in effect.



VIRAMONTES, J.


I CONCUR:



WILEY, J.

**STRATTON, P. J., Dissenting**

These proceedings commenced on March 2019. No doubt DCFS erred in failing to question extended family members despite having contact information for them. However, I conclude the error was harmless because Gavin's designated proposed adoptive parent is his maternal grandmother, with whom he has been placed for most of the last five years.

In enacting ICWA, Congress found "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." (25 U.S.C. § 1901(4).) ICWA reflects the intent of Congress "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.) The court is obligated to ask each "participant" in the proceedings whether they have reason to believe the child is an Indian child and to instruct the parties to inform the court if they subsequently receive information that provides a reason to know the child is an Indian child. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882–883, superseded by statute on other grounds as stated in *In re E.C.* (2022) 85 Cal.App.5th 123, 147; see 25 C.F.R. § 23.107(a) (2022).)

As our Supreme Court has recognized, "Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) In enacting these provisions, " 'Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians.' " (*Id.* at p. 9.)

The concern about separating Indian children from their Indian families, heritage and culture was the topic of extensive Congressional hearings when ICWA was enacted. As one commentator wrote, the " 'wholesale separation of Indian children from their families is perhaps the most tragic and destructive aspect of American Indian life today.' " (Atwood, Flashpoints Under the Indian Child Welfare Act: Toward a New Understanding of State Court Resistance (2002) 51 Emory L.J. 587, 601, cited in *In re A.C.* (2022) 75 Cal.App.5th 1009, 1014.)

ICWA authorizes states to provide even more protection than the federal statute provides. In 2006, the California legislature enacted parallel statutes to affirm ICWA's purposes and mandate compliance with ICWA in all Indian child custody proceedings. (*In re K.R.* (2018) 20 Cal.App.5th 701, 706, fn. 3.) In California, the child protection agency is obligated to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be,

2

an Indian child." (Welf. & Inst. Code, § 224.2, subd. (b); *In re Dominick D.* (2022) 82 Cal.App.5th 560, 566.)

Here, DCFS did not fulfill its duties under Welfare and Institutions Code section 224.2. This was error. But the next question is whether the error was prejudicial. A prerequisite to reversal of a trial court's decision under California law is a showing of miscarriage of justice. (Cal. Const., art. VI, § 13.)

I find no miscarriage of justice, that is, no prejudice. ICWA itself sets out placement priorities. Section 1915 of title 25 of the United States Code provides that in any adoptive placement of an Indian child under state law, "a preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families." (25 U.S.C. § 1915(a).) Extended family under ICWA includes grandparents. (25 U.S.C. § 1903(2).)

In this case, adoption by maternal grandmother implements ICWA's first preference. Gavin is in no danger of being separated from his biological family, the evil ICWA was enacted to prevent. (*In re J.W.* (2022) 81 Cal.App.5th 384, 391.) Moreover, even if a tribe had intervened, it would be bound by the placement priorities of the statute if, as the court found here, the first placement priority was in the minor's best interest. Given that Gavin's placement with maternal grandmother has extended over several years without incident and the proposed adoption does not eviscerate his connection to his biological family, I am hard pressed to conclude that a tribe's inability to participate trumps the stability and benefits afford by adoption by a longtime caregiver who is his blood relative.

3

I cannot find that ICWA and its California counterpart were intended to elevate a tribe's right to participate over this child's interest in a secure and safe placement within the bosom of his own biological family.  Tribes are included in the proceedings to ensure that no unreasonable and unjustified separation from biological family members occurs.  Nothing like that happened here.  That the tribe may be the unofficial real party in interest does not supersede the child's best interests.  I oppose delaying this biological-family adoption so that a tribe can come in and suggest someone else within the first preference category.  Neither the interests of the tribe nor of Gavin have been prejudicially trampled.


STRATTON, P. J.


4